# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ELEVACITY U.S., LLC §<br>d/b/a THE HAPPY CO. f/k/a §<br>ELEPENEURS U.S., LLC d/b/a §<br>ELEPRENEURS, LLC, §<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>BRIAN CHRISTOPHER SCHWEDA, JR., §<br>§<br>*Defendant* | Civil Action No. 4:22-CV-00042<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's 12(b)(2) Motion to Dismiss (Dkt. #6). In Plaintiff's Response (Dkt. #13), the Plaintiff requests jurisdictional discovery if any doubt exists as to the jurisdiction over Defendant. Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's request for jurisdictional discovery should be **granted.**

### BACKGROUND

This case arises out of the business relationship between Plaintiff Elevacity U.S., LLC d/b/a The Happy Co., f/k/a Elepreneurs U.S., LLC d/b/a Elepreneurs, LLC ("Elevacity") and Defendant Brian Christopher Schweda, Jr. ("Schweda"). Elevacity sells and markets "various health, wellness and happiness products and services through a direct sales community of independent contractors[,]" or distributros (Dkt. #1 ¶ 9). Elevacity's distributors market and sell the products and "recruit additional individuals into the Elevacity Distributor system to further promote and sell products and services to" potential customers (Dkt. #1 ¶ 9).

In 2018, Schweda joined Elevacity's business as a distributor, agreeing to three documents that pertained to his work with the company: (i) the Elepreneur Agreement; (ii) the Policies and Procedures of Eleprenuers LLC, and (iii) the Elepreneurs Social Media and Online Policy Guide (collectively the "Prior Agreements") (Dkt. #1 ¶ 13).  The Policies and Procedures of Elepreneurs, LLC stated that "Amendments and changes will be communicated to Elepreneurs through official Company publications, including posting on the website or by electronic mail. Amendments are effective and binding on all Elepreneurs five days after publication" (Dkt. #1, Exhibit 2 at p. 36). In 2021, Elevacity amended the Prior Agreements, posting its Independent Brand Partner Agreement and Policies and Procedures (collectively, the "Amended Agreements") to its distributors' Back-Offices, the primary portal for distributors to order more product and keep track of sales (Dkt. #1 ¶ 17).  The Amended Agreements contain various provisions providing that the Plaintiff's distributors, including Schweda, cannot solicit other distributors to leave Plaintiff or terminate their relationship with Plaintiff, use a social media site to draw inquiries from other distributors about a new network marketing company, or disparage Plaintiff by making negative comments (Dkt. #1 ¶ 19).

Schweda remained in his respective position as a distributor until December 17, 2021, when the defendant resigned (Dkt. #1 ¶ 20).  Following Schweda's resignation, Schweda allegedly began marketing and promoting different products, including an "energizing" coffee product, on social media.  More specifically, Plaintiff alleges that Schweda made a variety of Facebook posts, which were aimed at promoting his new marketing venture (Dkt. #1 ¶ 27).

On January 20, 2022, Elevacity filed suit against Schweda, asserting claims for breach of contract and tortious interference with existing contract (Dkt. #1).  On February 23, 2022, Defendant filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (Dkt. #6).  On

March 29, 2022, Elevacity filed a response to the motion to dismiss, requesting jurisdictional discovery in the event there is any doubt as to jurisdiction over Schweda (Dkt. #13). On April 5, 2022, Schweda filed a reply (Dkt. #15). On April 13, 2022, Elevacity filed a sur-reply (Dkt. #19).

## ANALYSIS

A district court has broad discretion regarding whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283–84 (5th Cir. 1982). The scope of permissible discovery is limited by the relevancy of the inquiry, although relevance is construed broadly in the context of discovery. *Id*. "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-cv-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F. 3d 841, 855 (5th Cir. 2000)).

Elevacity argues that it has made a preliminary showing of jurisdiction and that the discovery sought will produce relevant information (Dkt. #13 at p. 17). In response, Schweda argues that Elevacity's request for jurisdictional discovery should be denied because Elevacity cannot establish a tortious interference claim (Dkt. #15 at p. 9).

After a review of the pleadings, the Court determines that Elevacity should be entitled to jurisdictional discovery. Elevacity alleges that Schweda has specific contacts with Texas because "Defendant knew or should have known that the contract with which it interfered have substantial connections to Texas, the damage caused in Texas was significant, and that Defendant has thus purposefully directed tortious conduct towards Texas" (Dkt. #13 at p. 17). Moreover, Elevacity points to Schweda's Facebook postings as evidence of specific contacts with Texas (Dkt. #13 at p. 13). Considering the factual allegations above, Elevacity's assertion that Schweda has sufficient

3

contacts with the State of Texas is a "preliminary showing of jurisdiction," such that its jurisdictional allegation can be supplemented thought discovery. *See, e.g., Fielding v. Hubery Burda Media, Inc*., 415 F.3d 419, 429 (5th Cir. 2005).

Further, the discovery is likely to produce facts that are needed to withstand Defendant's Motion to Dismiss. *See Monkton Ins. Servs, Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). Elevacity represents that it is seeking facts that will include:

> (i) communications between Defendant and other distributors regarding recruitment, employment opportunities, and any non-solicitation obligations between such employees and Plaintiff; (ii) Defendant's knowledge of the locations of Plaintiff's distributors; (iii) Defendant's knowledge of the extent he knew Texas-based distributors had access to his Facebook; and (iv) Defendant's plans or attempts to expand its reach by partnering with individuals in Texas, including Texas-based distributors and those distributors' adherence to their non-solicitation obligations.

(Dkt. #13 at p. 18). According to Plaintiff, "[t]his discovery would support Plaintiff's contention that Defendant knew that Plaintiff, a Texas-based company, and its distributor relationship, as well as any resulting harm, were substantially connected to Texas; and thus, whether Defendant purposefully directed tortious conduct at Texas by improperly interfering with those relationships" (Dkt. #13 at p. 18). Considering the allegations in this case, the Court finds that this information is relevant to defeat Defendant's motion to dismiss.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's request for jurisdictional discovery should be **GRANTED.**

Accordingly, it is so **ORDERED** that:

1. Plaintiff has thirty (30) days to conduct jurisdictional discovery regarding Defendant's contacts with Texas. Plaintiff then has fourteen (14) days from that date to file a

4

supplemental brief. Defendant will be given fourteen (14) days following the filing of Plaintiff's supplemental brief to respond to jurisdictional allegations.

**IT IS SO ORDERED.**

**SIGNED this 29th day of June, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE